# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

VINCENT McFADDEN,           )
                           )
    Petitioner,           )
                           )
       vs.           )     No. 4:12CV00212 AGF
                           )
TROY STEELE,               )
                           )
    Respondent.           )

## MEMORANDUM AND ORDER

This matter is before the Court on the amended petition of Missouri state prisoner Vincent McFadden for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A jury convicted Petitioner of two counts of first-degree assault, two counts of armed criminal action, and one count of unlawful use of a weapon, all arising out of a gang-related shooting in Pine Lawn, St. Louis County, Missouri, on April 4, 2002, in which Petitioner shot into a van with three occupants and wounded one of them, Daryl Bryant. Petitioner was sentenced as a prior offender to a total of 30 years' imprisonment.

In his petition for habeas relief, as supplemented, Petitioner raises numerous claims, many concerning allegedly improper statements by the prosecutor during opening statement and closing argument, and ineffective assistance of defense counsel for failing to object to those comments. He also asserts that defense counsel was ineffective in other ways, including for pursuing a defense that called attention to Petitioner's gang affiliation, and for failing to challenge the prosecutor's peremptory challenge of two

African-American venirepersons under *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding that the Constitution prohibits the state from using peremptory challenges to exclude jurors based on race). Respondent argues that the claims of prosecutorial misconduct were procedurally defaulted, and that the state courts' adjudication of all of Petitioner's claims was reasonable. For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

### Trial

Trial commenced on December 14, 2004. At the time, Petitioner was awaiting trial for two homicides, including the May 2003 murder of a younger sister of one of the witnesses against Petitioner at his trial in the present case, Nicole Addison. Petitioner, Bryant, Addison and another key witness against Petitioner, Jermaine Burns, are all African-American. Prior to voir dire, defense counsel filed a motion in limine for a court order preventing the State "from utilizing its peremptory strikes in a biased manner to exclude African-American persons . . . from serving on the jury," citing *Batson*. (Resp. Ex. B, at 19-20.) The record does not contain a specific ruling on the motion. The record suggests that the prosecutor used two peremptory challenges to strike two African-American venirepersons. Defense counsel did not object to any of the state's peremptory strikes.

During opening statement, the prosecutor noted, without objection from defense counsel, that Petitioner was intimidating the entire Pine Lawn neighborhood and that the shooting in question in this case took place near a schoolyard. Defense counsel's opening statement depicted Petitioner as a neighborhood bully, about whom the witnesses

2

against him were willing to lie in order to effectuate his removal from the neighborhood, noting that Petitioner and Bryant were members of opposing gangs.

The evidence at trial showed the following.  At about 5:30 p.m. on April 4, 2002, Addison returned to her home in Pine Lawn after work and saw that Burns and Bryant were in front of her house in a van, with Burns in the driver's seat and Bryant in the front passenger seat.  Another individual, Samuel Simpson, was in the rear seat.  Addison knew that Bryant was affiliated with a rival gang in another neighborhood, and asked him to leave because his presence in Pine Lawn would be a problem for members of the Pine Lawn gang.  Petitioner, who was a member of the Pine Lawn gang and who was dating one of Addison's sisters at the time, drove up in a car, walked up to the van holding a large revolver, and said he was going to shoot Bryant.  Petitioner asked Burns, with whom he was friends, "what's this bitch-ass nigger doing on my set?" referring to Bryant and adding that he had been in a shooting incident with Bryant the previous evening.  Addison asked everyone to leave, watched Burns's and Petitioner's vehicles drive off, went inside her house, and within minutes, heard gunshots.  She got into a car with a woman from across the street and they pursued Burns's van.

When Burns stopped at a stop sign after turning off Addison's street, Petitioner pulled in front of him, jumped out of his car, ran up the passenger side of the van, and started shooting into the van through the window, shattering the window and hitting Bryant in the hip.  Burns immediately drove Bryant to the hospital, where Addison caught up with the van.  When she opened the door on the passenger side, Bryant fell on her and she saw his wound.  Bryant was treated for the gunshot wound, and the police

questioned both Bryant and Burns at the hospital; both implicated Petitioner in the shooting, at the hospital or soon thereafter. Police spoke to Addison the next day and she recounted the events she saw. Two .380 caliber bullets were recovered inside Burns's van in a position indicating that they entered the van through the passenger side windows. Shell casings were found in the intersection where the shooting occurred.

During defense counsel's cross-examination of Burns, Burns stated, "Man, that's fucked up." When defense counsel asked Burns what he meant, Burns explained that he and Petitioner had been friends until the April 2, 2002 incident, stating, "I have nothing against him over here. I mean – me doing something to him would not bring my little cousin's life back. I don't have nothing against him." The prosecutor interrupted and the questioning ended. (Resp. Ex. A, at 107-08.) The court dismissed the jury for the day and discussed the matter with counsel.

Defense counsel expressed his concern that the jury "may have heard" evidence about the pending murder case against Petitioner which may have inflamed the jury against him, such that "this jury may not be able to proceed with this particular case." *Id*. at 122. The prosecutor opined that the jury had not heard anything problematic before he interrupted Burns, and that defense counsel had invited the response by asking Burns to clarify his statement, when defense counsel knew that Petitioner stood accused of killing Burns's cousin (Addison's younger sister). The court stated that it did not believe that the jury heard anything prejudicial, and that all the court heard was mention of a cousin. The court did not believe a mistrial was called for, but told defense counsel that it would consider instructing the jury to disregard the comment. Defense counsel did not request

such an instruction, and nothing further was mentioned about the comment throughout the remainder of the trial.

Petitioner testified that Burns and Bryant began firing first, firing shots at Petitioner from inside their van as it was driving behind Petitioner's vehicle, and that he (Petitioner) yelled to a friend named Kyle Dismukes, who was standing in a nearby alley, that he was being shot at, and Dismukes shot into Burns's van from an alley (about 130 feet away) to protect Petitioner. Dismukes had since been killed. On direct examination, Petitioner testified that he did not tell this story to the police because he did not trust them.

During cross-examination, the prosecutor questioned Petitioner about his gang-related tattoos and had him describe them for the jury. Defense counsel did not object to this line of questioning, nor to the prosecutor's mention of the tattoos in closing argument. Also during cross-examination, the prosecutor asked Petitioner whether he ever told the police, or asked his attorney to tell the police, his version of events, again with no objection by defense counsel. Petitioner stated that he did not want to talk to the police before he had an attorney, and after he got an attorney, the police did not ask him what happened. (Resp. Ex. A, at 197-98.)

During closing argument, with regard to the veracity of the State's witnesses, the prosecutor stated:

> Now what interest does Darryl Bryant have in lying? He got nothing for this. All he got out of it was a call from me to the Prosecuting Attorney down in the City saying he did testify.

*Id.* at 216.

5

And later:

> Nicole Addison, what's her motive to lie? If she was going to lie, she would have said, Yeah, I ran around the corner, and I saw it happen. She didn't say that. She said, He threatened them, they left, I heard noises.

*Id.* at 221.

The prosecutor also stated as follows:

> Everybody in that community is going to know about this verdict, I guarantee you . . . . They told the police that night what happened. And they told you under oath in this courtroom what happened. And if they go through all of that and go back to their neighborhood as snitches, and they get nothing. I will never get anyone to cooperate with prosecution out of Pine Lawn again.

*Id.* at 220.

The prosecutor emphasized that Pine Lawn was a poor, violent neighborhood, and stated, "it only takes a few of them [Pine Lawn residents] to change a neighborhood. You move half a dozen of hims [sic] [Petitioner] into Frontenac [a wealthy neighborhood] and you have two Pine Lawns." *Id.* at 255. And with respect to gang violence in Pine Lawn, the prosecutor stated:

> And we read about that in the paper, and we say, Why doesn't somebody do something about that? All these people shooting each other? Why don't we do something about these gangbangers in these areas? We know who they are. Why don't we do something? We have done something. The police did their job. I did my job. And I convinced these people to seek justice here, not back in Pine Lawn. And they testified. And they told you what happened. And now it's in your hands, to do your job, under the law. To find him guilty. So that when we go back in the community, next time we have witnesses that say, "I've been shot at by whoever," we can say, "We can get you justice. Don't go back and take it into your own hands. We will listen to you. Just because you're poor, doesn't mean you're unbelievable. Just because you're poor, doesn't mean you can get shot at because it's in a violent neighborhood."

*Id.* at 256.

The prosecutor noted that the first time Petitioner told anyone his version of events, with Dismukes as the shooter, was during trial.  At the close of his argument, the prosecutor stated:  "I seek justice.  That's what prosecutors do.  We do not want innocent people prosecuted.  We want the guilty prosecuted.  Find him guilty."  *Id.* at 259.  Defense counsel did not object to any of the above comments.

## Direct Appeal

On direct appeal, Petitioner argued that (1) the trial court plainly erred by failing to strike *sua sponte* and instruct the jury to disregard the above-noted comments by the prosecutor made in closing argument (that the State's witnesses would get nothing for testifying if the jury did not convict Petitioner, that no one in Pine Lawn would cooperate with the prosecution of crime in Pine Lawn again if the jury did not convict Petitioner, that it was the jury's job to convict Petitioner, and that the prosecutor only seeks to prosecute guilty individuals); and (2) the trial court plainly erred by overruling defense counsel's request for a mistrial when Burns testified that his doing something to Petitioner would not bring Burns's cousin's life back.  (Resp. Ex. C.)

The Missouri Court of Appeals rejected the first claim, concluding that the prosecutor's challenged comments did not constitute an improper vouching for the credibility of the State's witnesses or suggest special knowledge by the prosecutor of Petitioner's guilt.  The second claim was rejected on the rationale that Burns's remark at issue did not identify any crime and was vague, not requiring a mistrial.  The court added

that as it was defense counsel who elicited the remark, Petitioner could not claim prejudice.  (Resp. Ex. E.)

**State Postconviction Proceedings**

For state postconviction relief, Petitioner asserted (Resp. Ex. G, at 92-200) that defense counsel was ineffective for failing to investigate the crime scene, and failing to call four named witnesses who would have testified that Dismukes told them that he (Dismukes), and not Petitioner, was the shooter.  He also asserted that numerous comments by the prosecutor during opening statement and closing argument deprived Petitioner of a fair trial, and that defense counsel was ineffective in failing to object to these comments.  At issue were the prosecutor's comments challenged on direct appeal, and the prosecutor's many comments noting the violence in Pine Lawn−comments Petitioner argued inflamed the fears of the jury and shifted the jury's focus from its duty to determine whether the state's witnesses told the truth, to matters outside the scope of the prosecution.

Petitioner further maintained that defense counsel was ineffective for pursuing an unreasonable trial strategy, namely, that the shooting was gang related, thereby opening the door to the prosecution's introduction of prejudicial evidence and comments related to gangs.  Defense counsel was also ineffective, according to Petitioner, for failing to raise a *Batson* challenge to the prosecutor's use of two peremptory strikes to remove African-American veneirepersons.   Lastly, Petitioner maintained that the prosecutor's cross-examination of Petitioner about his failure to tell police that Dismukes was the

shooter, was an improper use of Petitioner's invocation of his *Miranda* rights and defense counsel was ineffective for failing to object.

A hearing was held on February 23 and 24, 2009. At the start of the hearing, the motion court took judicial notice of the court files and trial transcripts of two homicide cases against Petitioner that were tried following the case underlying this habeas action. In each of these cases, Petitioner received the death penalty. At the time of the evidentiary hearing, these cases were before the Missouri Supreme Court on direct appeal. Numerous witnesses testified at the hearing (some by deposition), including two forensic experts for Petitioner, Petitioner's defense counsel, and Evelyn Carter, who was Burns's cousin and knew Petitioner. (Resp. Ex. F.)

The two forensic examiners attempted to show that the windows of Burns's van were shattered by gunshots originating inside the van. Defense counsel testified that Petitioner's trial was the seventh felony jury trial he had handled as a public defender. He conjectured that the reason he did not object to the peremptory strikes of the two African-American venirepersons was that he may have thought such objections could only be made to strikes for cause. Defense counsel testified that he had no evidence that any biased or unqualified juror sat on the jury. Upon questioning by the court, Petitioner's postconviction counsel stated that he, too, lacked any such evidence.

Defense counsel testified that his strategy at Petitioner's trial was to present Petitioner as a bully whom people were willing to falsely accuse, so that they could effectuate his removal from the neighborhood. Defense counsel testified that prior to trial, Petitioner had told him that he did not know who shot into Burns's van, and only

after the state presented its case did Petitioner tell counsel that Dismukes was the shooter. Defense counsel further testified that he sometimes did not object to the prosecutor's comments in opening and closing argument so as not to highlight the comments.

Carter testified that prior to Petitioner's arrest, Petitioner apologized to her for having shot into the van, wounding Bryant, when Burns was also in the van. *Id*. at 346-56. The state offered and then withdrew Carter's September 17, 2004 deposition taken by Petitioner's counsel in the two homicide cases. In that deposition Carter had stated that Petitioner never said anything to her about who shot Bryant.

On March 9, 2009, Petitioner filed a motion to strike Carter's testimony because it was directly contradicted by her earlier deposition testimony, and to disqualify the prosecutor handling the postconcivtion action for failing to point out the contradiction and instead withdrawing the deposition. Petitioner also asked that Carter's deposition be admitted into evidence and/or that he be granted a new evidentiary hearing. *Id*. at 211-16. The motion court denied the motion with the exception of the request to admit Carter's deposition into evidence. *Id*. at 292.

On June 30, 2010, the motion court issued its decision (*Id*. at 384-453), rejecting all of Petitioner's claims. The court first held that defense counsel was not ineffective for failing to investigate the crime scene because the physical evidence, namely the path of the bullets and the site of the shell casings, was consistent with the testimony of Burns and Bryant and not consistent with Petitioner's version of the shooting. Similarly, counsel was not ineffective for not calling the four witnesses in question.

The motion court found that the testimony of Petitioner's two forensic examiners was not credible and their methods not reliable, as it could not be determined from photos of the crime scene whether more glass was on the street or inside the van, and as their testimony did not explain why shell casings were found in the intersection and not in the alley.

The motion court then made findings with respect to each of the numerous comments by the prosecutor that Petitioner claimed deprived him of a fair trial, and concluded that none were improper and/or prejudicial, and that therefore, defense counsel was not ineffective for failing to object to them. The court concluded that testimony about gang affiliation was relevant and admissible, whether offered first by the prosecutor or by defense counsel, as it was the motive for Petitioner shooting Bryant, and that Petitioner "was not prejudiced by trial counsel's trial strategy, which was effective and reasonable. He was prejudiced by the strength of the State's case against him, and by the incredibility of his own testimony." *Id*. at 443.

The court rejected the ineffective assistance of counsel claim based on defense counsel's failure to raise a *Batson* challenge, on the basis that Petitioner did not show, and that there was no evidence to suggest, that unqualified persons sat on the jury. Moreover, the court found defense counsel's testimony, that he may have had the mistaken belief that Batson challenges could only be lodged at strikes for cause, not to be credible. The court rejected Petitioner's *Miranda*-related argument, finding that the door was opened to the prosecutor's questions by Petitioner's testimony on direct examination

that he did not tell the police the story because he did not want to talk to them without an attorney.

In affirming the denial of post-conviction relief on August 16, 2011, the Missouri Court of Appeals held that the challenged statements of the prosecutor were all subject to objection at trial and direct appeal, and were not cognizable in the action for postconviction relief as freestanding claims. The appellate court agreed with the motion court's rejection of Petitioner's remaining claims, essentially for the same reasons advanced by the motion court. (Resp. Ex. J.) Petitioner did not raise on appeal the motion court's denial of his motion to disqualify the prosecuting attorney due to the matter of Carter's testimony and prior deposition. In a "Memo to Case File" dated December 13, 2010, Petitioner's postconviction appellate counsel noted that he did not see the motion as having merit, and that the motion court stated that it did not believe the state was trying to conceal anything when it offered Carter's deposition at the evidentiary hearing and then withdrew it. (Doc. No. 20.) Counsel referenced a supplemental transcript which has not been made a part of the record.

**Federal Habeas Action**

As noted above, Petitioner raises numerous claims, many concerning allegedly improper statements by the prosecutor during opening statement and closing argument, and ineffective assistance of defense counsel for failing to object to those comments. In total, Petitioner raises 19 grounds for habeas relief, as follows: (1) the prosecutor's comments that it was the jury's job to convict Petitioner, that Petitioner should be convicted to reward the state's witnesses and to ensure the success of future prosecutions

in Pine Lawn, and that the State only seeks to prosecute guilty people, were all improper and denied him a fair trial; (2) the trial court erred in allowing Burns's testimony that his doing something to Petitioner would not bring Burns's little cousin's life back; (3) defense counsel was ineffective for pursuing a "gang member conflict defense"; (4) defense counsel was ineffective for failing to object to the state's cross-examination of Petitioner regarding his gang tattoos and to the state's argument about them; (5) defense counsel was ineffective for failing to object to the state's closing argument regarding its inability to prosecute other Pine Lawn gang offenses if Petitioner were not convicted; (6) the state's closing argument regarding its inability to prosecute other Pine Lawn gang offenses was improper; (7) defense counsel was ineffective for failing to object to the state's closing argument that Addison and Burns had no motive to falsely accuse Petitioner; (8) the state's closing argument that Addison and Burns had no motive to falsely accuse Petitioner was improper; (9) defense counsel was ineffective for failing to object to the state's opening statement that the crimes occurred near a schoolyard; (10) the prosecutor's opening statement that the crimes occurred near a schoolyard was improper; (11) defense counsel was ineffective for failing to object to the state's closing argument regarding prosecutorial discretion in bringing charges; (12) the prosecutor's closing argument regarding prosecutorial discretion in bringing charges was improper; (13) defense counsel was ineffective for failing to object and request a mistrial when Burns testified nothing would bring back his cousin's life; (14) defense counsel was ineffective for failing to object to the state's closing argument that to acquit Petitioner, the jury had to believe that all the state's witnesses lied; (15) the state's closing argument

that to acquit Petitioner, the jury had to believe that all the state's witnesses lied was

improper; (16) defense counsel was ineffective for failing to raise a *Batson* challenge to

the state's exercise of peremptory challenges to exclude two African-American

venirepersons; (17) defense counsel was ineffective for failing to object to the state's

cross-examination of Petitioner that hinted at Petitioner's invocation of his *Miranda*

rights; (18) the prosecutor's cross-examination that hinted at Petitioner's invocation of

his *Miranda* rights was improper; and (19) the St. Louis County Prosecutor's office

should have been disqualified from Petitioner's post-conviction case because the state

elicited testimony from Evelyn Carter that Petitioner confessed to the crimes, knowing

that Carter had stated in a prior deposition that Petitioner had not confessed.

## DISSCUSSION

### Standard of Review

Where a claim has been adjudicated on the merits in state court, AEDPA provides

that federal habeas corpus relief cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable
   application of, clearly established Federal law, as determined by the
   Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination
   of the facts in light of the evidence presented in the State court
   proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion

opposite to that reached by the Supreme Court on a question of law, or confronts facts

that are materially indistinguishable from a relevant Supreme Court precedent but arrives

at the opposite result.  *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013).  A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

**Alleged Prosecutorial Misconduct** (Claims 1, 6, 8, 10, 12, 15, & 18)

Petitioner challenges statements made by the prosecutor during opening and closing arguments, and during the examination of Petitioner.  "[A] prosecutor's improper comments [during argument to the jury] will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  "Federal habeas relief should only be granted if the prosecutor's . . .  argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial" and the petitioner established "a reasonable probability that the outcome [of the trial] would have been different but for the improper statements."  *Kennedy v. Kemna*, 666 F.3d 472, 481 (8th Cir. 2012) (citations omitted).

Petitioner's first claim was raised on direct appeal for plain error review.  This limits this Court's own review of the state court's adjudication of the claim to, at the most, considering whether the decision of the state court of appeals rejecting this claim resulted in manifest injustice.  *See Burns v. Gammon*, 173 F.3d 1089, 1095 (8th Cir. 1999) (recognizing circuit authority for not considering the merits of such a claim at all,

but deciding that giving the claim limited plain error review, as did the state court, would not encroach on the authority of the state courts).

Here the Court concludes that prosecutor's statements challenged in Petitioner's first claim, while possibly improper, did not result in manifest injustice to Petitioner. There is no reasonable probability that they, individually or in combination, affected the verdict. The evidence of Petitioner's guilt was substantial, and the Court notes that the trial court instructed the jury that counsels' arguments were not evidence and that it was the jury's duty to be governed in its deliberations by the evidence. (Resp. Ex. B at 74.) *See, e.g.*, *Copeland v. Washington*, 232 F.3d 969, 975 (8th Cir. 2000) (affirming the denial of habeas relief, even though of the prosecutor's argument, such as stating that the petitioner's crimes were the worst crimes ever to happen in the state's history, were improper); *Hennon v. Cooper*, 109 F.3d 330, 333 (7th Cir. 1997) (holding that the prosecutor's statements inviting the jury to convict the petitioner in order to indicate their dislike of gang violence, and frightening the jury about gang violence on the street were improper, but did not warrant vacating the petitioner's conviction given the strength of evidence against the petitioner).

The Court agrees with Respondent that the remaining claims of prosecutorial misconduct during argument to the jury, and in cross-examination of Petitioner (regarding Petitioner's post-*Miranda* silence), were procedurally defaulted due to Petitioner's failure to object to them at trial, or even raise them on direct appeal for plain error review. Under the doctrine of procedural default, this Court is therefore barred from considering the merits of those claims, absent a showing by Petitioner of cause and

prejudice to excuse the default. *See, e.g.*, *Burns v. Gammon*, 260 F.3d 892, 895 (8th Cir. 2001). Ineffective assistance of defense counsel can serve as cause, but only if Petitioner shows "that the ineffective assistance of trial counsel worked to [Petitioner's] actual and substantial disadvantage, and infected his entire trial with constitutional error." *See id.* (citing *Carroll v. Schriro*, 243 F.3d 1097, 1102 (8th Cir. 2001).

Here, the state motion court performed a careful analysis of each allegation of prosecutorial misconduct and reasonably concluded that the prejudice to Petitioner was not significant. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 638-39 (1993) (finding no prejudice from the prosecutor's use, for impeachment purposes, of a defendant's post-Miranda silence where the evidence of guilt was "weighty").

**<u>Assistance of Defense Counsel</u>** (Claims 3, 4, 5, 7, 9, 11, 13, 14, 16, & 17)

To prevail on a claim on ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The first prong requires a showing 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.' The second prong requires a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *White v. Dingle*, 757 F.3d 750, 752-53 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687, 694). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Tunstall v. Hopkins*, 306 F.3d 601, 606 (8th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

17

Whether to object during the prosecution's opening or closing argument is a matter of trial strategy, and defense counsel testified during state postconviction proceedings that he opted not to object so as not to emphasize problematic comments further. Strategic decisions like these are "virtually unchallengeable," *see Dansby v. Hobbs*, 766 F.3d 809, 836 (8th Cir. 2014) (citation omitted), and the Court sees no substantial argument that defense counsel's failure to object to the comments at issue was outside the wide range of reasonable professional assistance. *See Bowman v. Russell*, No. 4:12-CV-0955-JCH, 2015 WL 687179, at *9 (E.D. Mo. Feb. 18, 2015) (holding that where defense counsel explained that part of his trial strategy was to limit his objections during closing arguments, it was reasonable for the state courts to conclude that these decisions fell within the wide range of deference given to a trial attorney's strategic decisions); *Johnston v. Bowersox*, 119 F. Supp. 2d 971, 985 (E.D. Mo. 2000) (holding that defense counsel's failure to object to the prosecutor's argument was not ineffective where the argument was not in fact objectionable and/or because the prejudicial impact was insignificant in the overall context of the evidence and argument presented to the jury), *aff'd sub nom. Johnston v. Luebbers*, 288 F.3d 1048 (8th Cir. 2002).

The Court further concludes that the state courts reasonably held that defense counsel's failure to investigate the crime scene did not constitute ineffective assistance of counsel. The state courts applied the correct legal principles to the claim, and reasonably found, based on the evidence at trial and at the postconviction evidentiary hearing, that the failure of defense counsel to investigate the scene of the shooting was not deficient performance, nor did it prejudice Petitioner. *See Kennedy*, 666 F.3d at 478 (rejecting

habeas petitioner's claim that counsel was ineffective for failing to investigate the crime scene, where the state court reasonably concluded that the state's case against the petitioner was strong).

The state courts also reasonably held that defense counsel's trial strategy was not unconstitutionally deficient.  Furthermore, the state courts correctly held that Petitioner's ineffective assistance of counsel claim based on *Batson* was precluded because Petitioner did not demonstrate prejudice, which in this context could be established by showing that a juror who actually sat on the jury was biased.  *See Young v. Bowersox*, 161 F.3d 1159, 1160 (8th Cir. 1998); *see also United States v. Kehoe*, 712 F.3d 1251, 1253 (8th Cir. 2013) (reaffirming the holding in *Young*); *Strong v. Roper*, No. 4:08CV1917 JCH, 2011 WL 2600241, at *14-15 (E.D. Mo. June 29, 2011) (rejecting habeas claim similar to Petitioner's).

**Trial Court's Alleged Error** (Claim 2)

Petitioner asserts that the trial court erred and deprived him of a fair trial by allowing Burns's testimony that his doing something to Petitioner would not bring Burns's little cousin's life back.  Upon review of the trial transcript, the Court discerns no error by the trial Court.  The jury was not made aware of the fact that Burn's cousin was allegedly murdered or that Petitioner was in anyway involved.

**Postconviction Court's Denial of Motion to Strike Carter's Testimony and/or to Disqualify State's Attorney** (Claim 19)

The Court's review of this claim is barred because it was not raised on appeal from the denial of postconviction relief, and ineffective assistance of postconviction

appellate counsel has not been recognized as cause to excuse such a default.  *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012); *Hardins v. Wallace*, No. 4:13-CV-820 CEJ, 2014 WL 5343327, at *2 (E.D. Mo. Oct. 20, 2014).  In any event, the Court discerns no prejudice to Petitioner resulting from the failure to strike Carter's testimony and/or disqualify the state's attorney.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2).  *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Vincent McFadden for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 4th day of March, 2015.

20